IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JACQUELINE HUMPHREY, <br><br> Plaintiff, <br><br> v. <br><br> AUGUSTA, GEORGIA, <br><br> Defendant. | CIVIL ACTION FILE NO. <br><br> 1:19-cv-00084-JRH-BKE |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT AUGUSTA'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Jacqueline Humphrey, by and through her undersigned counsel, and submits this Response in Opposition to Defendant Augusta's Motion for Summary Judgment. [Doc. 43].

**I.   INTRODUCTION**

Plaintiff's Amended Complaint against Defendant sets forth one Count of Retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") [Doc. 12]. Defendant Augusta's Motion for Summary Judgment ("Defendant's Motion") challenges that claim, arguing that Plaintiff fails to establish certain prima facie elements, and, assuming *arguendo* that the prima facie elements are shown, Defendant had a legitimate business reason for Plaintiff's termination. [Doc. 43]. Based on the following, Plaintiff asks that Defendant's Motion be denied.[1]

---

[1] Plaintiff stipulates that a plaintiff may not recover punitive damages against a governmental entity under Title VII, and makes no challenge to Defendant's Motion in that regard.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment must be denied unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice-Lamar v. City of Ft. Lauderdale, Fla.,* 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party may also meet its burden by pointing out that there is an absence of evidence to support an element of the case on which the nonmoving party bears the burden of proof. *Celotex*, 477 U.S. at 325. "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The nonmoving party is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. The Court must view the evidence and factual inferences in the light most favorable to the nonmoving party. *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc). And, to the extent that material facts are genuinely in dispute, the Court must resolve the disputes in the nonmovant's favor. *See Vaughan v. Cox*, 343 F.3d 1323, 1326 n.1 (11th Cir. 2003). If the record does not blatantly contradict the nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on

the evidence presented." *Anderson*, 477 U.S. at 252; *accord EPL, Inc. v. USA Fed. Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999). "If the record presents disputed issues of fact, the court may not decide them; rather, it must deny the motion and proceed to trial." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Tullius v. Albright*, 240 F.3d 1317, 1320 (11th Cir. 2001)).

### III. STATEMENT OF FACTS

This matter arises out of Plaintiff Jacqueline Humphrey's employment and subsequent termination by Defendant Augusta. Plaintiff contends that during her employment as an EEO Officer with Defendant, she made adverse findings of discrimination against Defendant with respect to ongoing EEO investigations, and Defendant ultimately fired Plaintiff for failing to side with the government. Defendant, on the other hand, contends that Plaintiff was not fired for retaliatory purposes, and points to several allegedly non-discriminatory reasons for Plaintiff's termination. An important piece of evidence in this matter is the transcript of the meeting in which Plaintiff's termination is discussed (the "termination meeting"). The transcript not only shows that Defendant failed to follow its own policy outlining guidelines for termination of employees such as Plaintiff, but also that retaliatory reasons were discussed in the minutes leading up to Plaintiff's separation.

Plaintiff is a veteran of the United States military, spending over 20 years in service. (Deposition of Plaintiff Jaqueline Humphrey "Depo. of Pl." at pp. 17, 29). Throughout her employment in and outside of the military, Plaintiff received extensive Human Resources training and certifications, and additionally holds college degrees connected or related to Human Resources. (Depo. of Pl. at pp. 21-25). This includes a Bachelor's Degree in Human Resource

Management from Park University and a Dual Master's Degree in Human Resource Development and Management from the University of Maryland. (Id.). Plaintiff obtained certification from the Defense Equal Opportunity Management Institute. (Depo. of Pl. at p. 22-23). Other than her employment with Defendant which constitutes the subject of this lawsuit, Plaintiff has never been terminated from any position or employment. (Depo. of Pl. at p. 15). Similarly, other than the instant action. Plaintiff has not previously engaged in litigation regarding her employment. (Id.).

Plaintiff was hired by Defendant in 2009 as the Equal Employment Opportunity Director ("EEO Director") for Defendant's Equal Opportunity Office, after applying for that position through Defendant's job announcement. (Depo. of Pl. at pp. 25-28, 31). While Defendant's Motion argues that Plaintiff was instead initially hired by Defendant as the EEO Coordinator, this is disputed. Plaintiff will now, however, stipulate that she was employed by Defendant as the EEO Coordinator during the relevant time period and at the time of her termination.

In her role with Defendant's Equal Opportunity Office, Plaintiff received and reviewed allegations of unfair employment practices and made appropriate recommendations. (Depo. of Pl. at p. 32). In general, Plaintiff's duties required her to conduct investigations, prepare investigative reports, and propose corrective action to the Commission. (Depo. of Pl. at pp. 32-33). Plaintiff's job duties did not include making findings of discrimination in favor of Defendant emoployees and contrary to Defendant's interests, nor did it include directly communicating with the federal EEOC office. (Id.). Throughout the relevant time period, during which no EEO Director was employed, Plaintiff reported directly to the Mayor and the entire Augusta Commission ("Commission" or "Commissioners"). (Depo. of Pl. at p. 73). During that

time, Plaintiff never received a reprimand from Defendant. (Depo. of Pl. at p. 162).

During her tenure, Plaintiff prepared an internal EEO finding regarding a Complaint filed by an Augusta Engineering Department employee, Ms. Evelyn Washington. (Depo. of Pl. at p. 49). After receiving that EEO finding, Ms. Washington filed a separate Charge of Discrimination with the EEOC. (Depo. of Pl. at p. 49). On or about January 10, 2014, Defendant's Law Department was informed that Plaintiff was in communication with the federal EEOC office regarding Ms. Washington's claim of discrimination. (Depo. of Pl., Exhibit 6). At this time, Defendant was also made aware that Plaintiff directly sent documentation relating to the Charge to the EEOC. (Id.). Plaintiff only spoke with the EEOC after she was directly contacted by the EEOC due to Defendant's failure to respond to the EEOC's requests for information. (Depo. of Pl. at p. 49). In May 2014, Plaintiff thereafter issued a memo that detailed her opposition to the unlawful employment practices by Defendant's legal counsel which violated Title VII, and that Plaintiff suffered retaliation as a consequence. (Depo. of Pl., Exhibit 17).

On May 15, 2014, Plaintiff noted in a case determination for Defendant employee Mr. Roy Searles that she perceived certain actions of Human Resources and Mr. Searles' supervisor to be retaliatory for purposes of Title VII. (Depo. of Pl., Exhibit 14). Defendant was aware of that finding and report. (Depo. of Pl., Exhibit 15). On or about May 23, 2014, Plaintiff filed an EEOC complaint on her own behalf regarding the same. (Depo. of Pl. at p. 96 and Exhibit 18). While Defendant's Motion argues that Defendant was unaware of Plaintiff's 2014 EEOC Complaint until after her termination, one Commissioner testified that there was a conversation in a legal session regarding Plaintiff filing with the EEOC. (Deposition of William Lockett "Lockett Depo." at pp. 31-32).

During a March 24, 2015 meeting with the Commissioners, the Mayor informed Plaintiff that Defendant employee Mr. James Henry refused to settle his EEOC case because the investigator substantiated Mr. Henry's claims. (Depo. of Pl. pp. 160-161). The Mayor went on to say that the EEOC investigator substantiated the claim because of Plaintiff's findings. (Id.). Mr. Henry's underlying complaint to the EEO office alleged unfair pay practice regarding race and pay discrimination. (Plaintiff's Exhibit A; Depo. of Pl. at Exhibit 26). Plaintiff's finding in the investigation of Mr. Henry's complaints revealed that his allegations of Title VII violations were founded. (Plaintiff's Exhibit A; Depo. of Pl. at Exhibit 26).

On or about March 25, 2015, Plaintiff substantiated another employee's allegations against Defendant. (Depo. of Pl., Exhibit 35). Plaintiff's finding in the investigation of Ms. Lori Howard's complaints revealed that Ms. Howard's allegations of Title VII violations were founded. (Id.). That finding against Defendant was sent to all Defendant Commissioners. (Id.).

The Commissioners called a special meeting on March 30, 2015. (Declaration of Lena J. Bonner "Decl. of Lena J. Bonner," Exhibit 2). That meeting between the Mayor and Commissioners led to Plaintiff's termination shortly thereafter. (Id.) During the meeting, it was discussed that Plaintiff … "substantiates her claim in the end and the [employee goes] to the EEOC. This is where the problem comes in." (Id.). The Commissioners further noted in a negative manner toward Plaintiff that "if you're working for the government you want to protect this government." (Id.). The Commissioners cited to emails concerning Mr. Henry, who had refused to settle his EEOC case due to Plaintiff's finding against Defendant. (Decl. of Lena J. Bonner, Exhibit 2 at p. 11; Depo. of Pl. pp. 160-161). The Commissioners then discussed that there has been "substantial cost to this body as a result of the work done out of the EEO office …

notwithstanding any litigation that has resulted that we've ultimately ended up settling." (Decl. of Lena J. Bonner, Exhibit 2, at p. 15).

One of the Commissioners present at the March meeting was Mr. William Charles Lockett. (Decl. of Lena J. Bonner, Exhibit 2). Mr. Lockett was a Defendant Commissioner during Plaintiff's employment. ("Lockett Depo." at p. 8). Mr. Lockett did not vote in favor of Plaintiff's termination, and he testified that Plaintiff's job performance was excellent. (Lockett Depo. at pp. 14, 33, 37; Decl. of Lena J. Bonner, Exhibit 2). Mr. Lockett discussed that during her employment, Plaintiff was often called into a legal session and rebuked for taking EEO action against a friend or acquaintance of one of the sitting Commissioners. (Lockett Depo. at p. 27). Mr. Lockett observed that his colleagues (the Commissioners) felt that Plaintiff was friendlier to the people she was investigating on behalf of than she was to Defendant. (Lockett Depo. at p. 29).

Mr. Lockett noted that Plaintiff was never counseled, reprimanded, or placed on a work performance [plan] during her employment with Defendant. (Lockett Depo. at p. 34). Mr. Lockett also testified that Defendant did not follow the proper procedures to terminate Plaintiff, as she should not have been terminated without prior disciplinary action. (Lockett Depo. at p. 43). According to Defendant's Personnel Policies and Procedures Manual ("PPPM"), Section 300.012, Review and Approval Process, an employee's supervisor "shall" notify the employee that formal disciplinary action such as termination is being considered, provide the facts and description of the alleged infraction, and the consequences under consideration. (Plaintiff's Exhibit B). The PPPM also states that after receiving notice of the considered formal disciplinary action, the employee shall be given five (5) working days in which to respond. (Id.). The notice

and opportunity to respond did not occur here, and Plaintiff learned of her termination only after the fact through the media. (Depo. of Pl. at pp. 163-164). The PPPM process was not followed with respect to Plaintiff's termination. (See Decl. of Lena J. Bonner, Exhibit 2).

While not present in the termination meeting, another Commissioner offered insight into the reasoning behind Plaintiff's termination from her employment with Defendant. Mr. Marion Franklin Williams was a Defendant Commissioner during Plaintiff's tenure, and testified that Plaintiff did an excellent job in her role. Mr. Williams testified that Plaintiff was not terminated for performance, and was instead terminated without cause. (Williams Depo. at pp. 14, 16).

When asked in the State of Georgia Department of Labor Separation Notice to provide a reason for Plaintiff's termination and to "state fully and clearly the circumstances of the separation," Defendant stated only "termination." (Plaintiff's Exhibit C). On April 30, 2015, Plaintiff filed her second charge of retaliation with the EEOC, Charge Number 415-2015-00577. (Plaintiff's Exhibit E). On May 30, 2018, the EEOC found reason to believe that Defendant terminated Plaintiff in retaliation for engaging in a protected activity. (Plaintiff's Exhibit F). The EEOC also found that Defendant's proffered reason for the termination did not withstand scrutiny. (Id.).

## IV.   ARGUMENT AND CITATION TO AUTHORITY

When a plaintiff seeks to establish a claim of retaliation under Title VII through circumstantial evidence a court may use the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). To establish a prima facie case of a Title VII retaliation claim, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she

suffered a materially adverse action and (3) there was a causal link between the two. *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 856 (11th Cir. 2010); *see also Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000). The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008) (quotation omitted).

Under *McDonnell Douglas*, if a plaintiff establishes a prima facie case of retaliation, and the defendant provides a legitimate nondiscriminatory reason for the materially adverse action, then the plaintiff must finally prove that the defendant's reasons were a pretext for discrimination. *Ray v. City of Tallahassee*, 664 Fed. Appx. 816, 818 (11th Cir. Nov. 8, 2016) (citing *Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009)). Pretext means that the reason given by an employer is not the reason for an adverse employment action; in other words, a plaintiff must show both that the reason given was false and that the real reason was discrimination. *Gilliard v. Georgia Dep't of Corrections*, 500 Fed. Appx. 860, 864-65 (11th Cir. Dec. 7, 2012). A plaintiff must meet the proffered reason directly and rebut it and may not succeed by arguing about the wisdom of the reason. *Id.* (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1030, (11th Cir. 2000) (en banc)).

    A.    **PLAINTIFF ENGAGED IN A STATUTORILY PROTECTED ACTIVITY**

Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice ..., or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *McCann v. Tillman,* 526 F.3d

1370, 1375 (11th Cir.2008)(alterations in original) (citing 42 U.S.C. § 2000e–3(a)). The two prohibitions on retaliation are generally known as the opposition clause and the participation clause. *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). Pursuant to the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3 (a).[2] Defendant's Motion argues that Plaintiff's retaliation claim under the opposition clause fails as Plaintiff's protected activities were in the performance of her job duties, relying on the "manager rule." Defendant's position is both factually and legally incorrect.

To clarify, Plaintiff's position is not that the investigation of internal EEO complaints serve as a basis for her protected activities. Plaintiff's position is that she went beyond the internal investigation process and made findings of discrimination in favor of employees, against the interests of Defendant.[3] The findings were adverse to Defendant, which Defendant acknowledged in the March 30, 2015 termination meeting. Specifically, Defendant described in no uncertain terms that Plaintiff should have protected the government (presumably by not making findings for the employees), and the failure to do so resulted in substantial cost to Defendant. (See Decl. of Lena J. Bonner, Exhibit 2). Defendant discussed those adverse findings of discrimination against the Defendant at least twice during the week leading up to Plaintiff's termination, as the Mayor also brought it to issue in the March 24, 2015 meeting. (Depo. of Pl. pp. 160-161).

---

[2] Plaintiff stipulates that the evidence does not not support a claim of retaliation pursuant to the participation clause, and makes no challenge to Defendant's Motion on that basis. Plaintiff maintains her claims of retaliation pursuant to the opposition clause.
[3] Plaintiff made findings of Title VII violations against Defendant in favor of Mr. James Henry and Ms. Lori Howard.

Plaintiff's activity here distinguishes her situation from Defendant's cited cases outlining the manager rule. First of all, there is no evidence that Plaintiff is a manager, nor has Defendant argued as such. As stipulated herein, Plaintiff was an "EEO Coordinator," not the "EEO Director." As outlined in *Laska v. Kelley Mfg. Co.,* the rule as set forth in *Brush* refers generally to a "management employee," which encompasses persons in management positions outside of human resources. *Laska v. Kelley Mfg. Co.,* 2019 U.S. Dist. LEXIS 165107 (M.D. Ga. Sept. 26, 2019) (citing to *Brush v. Sears Holdings Corp.*, 466 Fed. Appx. 781 (11th Cir. 2012)). Here, there is no evidence that an "EEO Coordinator" is a management position and that the management rule would apply.

Second, assuming the court factually finds Plaintiff to have been a manager, Plaintiff's adverse findings against Defendant are separate from the investigations that were part of her normal job performance. Defendant seems to acknowledge this distinction, as the Commission noted during the termination meeting that since Plaintiff worked for the government her job should be to protect the government. (See Decl. of Lena J. Bonner, Exhibit 2). Plaintiff's adverse findings against the government and clear opposition to certain practices were more than a "[disagreement] with the way in which her employer conducted internal investigations." *See Brush v. Sears Holdings Corp.*, at 787. Further, the Court in *Brush* suggested that if an employee takes "any adverse action to the company during the investigation" a protected activity took place. *See Id.*(finding that "there is simply no evidence in the record that [plaintiff] was asserting any rights under Title VII or that she took any action adverse to the company during the investigation.") Here, Plaintiff took adverse action against Defendant, thereby opposing Defendant. As such, Plaintiff's objections to Defendant's conduct went beyond her normal duties

as an EEO Officer and the manager rule does not apply.

In addition to the adverse finding of discrimination against Defendant, Plaintiff also voiced her opposition to retaliatory behaviors directed at Plaintiff herself during the course of her employment.[4] In doing so, Plaintiff crossed "the line from being an employee 'performing her job ... to an employee lodging a personal complaint,'" such that her activities were protected. *See Brush* at 787. (11th Cir. 2012). Based on the record evidence, a jury could find that Plaintiff engaged in protected activity sufficient to establish a prima facie case of retaliation.

**B.    THERE IS A CAUSAL LINK BETWEEN PLAINTIFF'S PROTECTED ACTIVITY(IES) AND HER TERMINATION.**

In order to show causation, a plaintiff can show that: (1) the decision-makers were aware of her protected conduct, and (2) the protected activity and the adverse employment action were not wholly unrelated. *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 590 (11th Cir. 2000). "A plaintiff satisfies this element if [s]he provides sufficient evidence of knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse ... action." *Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir. 2004) (citation and quotation omitted).

As discussed above, Plaintiff made several protected complaints, including the findings in favor of employees against the government, and voicing opposition to retaliatory behavior against herself. It is undisputed that Defendant was aware of the findings in favor of Ms. Howard

---

[4] On May 14, 2014, Plaintiff issued a memo that detailed that she had been opposing unlawful employment practices by Defendant's legal counsel that violates Title VII. (Depo. of Pl., Exhibit 17). On May 15, 2014, Plaintiff noted a case determination for Defendant employee Mr. Roy Searles that she perceived the actions of HR and Mr. Searles' supervisor to be retaliatory for purposes of Title VII. (Depo. of Pl., Exhibit 14). Defendant was aware of that finding and report. (Depo. of Pl., Exhibit 15).

and Mr. Henry. As previously stated, on March 24, 2015, during a Commission meeting, the Mayor informed Plaintiff that Mr. Henry refused to settle his EEOC case due to Plaintiff's findings. (Depo. of Pl. pp. 160-161). One day later, on or about March 25, 2015, Plaintiff made a finding for Ms. Howard and notified Defendant as such. (Depo. of Pl., Exhibit 35). Five days later Plaintiff was terminated.

      Assuming that the only circumstantial evidence here was temporal, the fact that Plaintiff was terminated less than one week after making the adverse finding against the Defendant in Ms. Howard's case would arguably satisfy causation. Here, however, there is additional evidence apart from timing that suggests a connection between the activities and the termination. Specifically, comments made during the termination meeting show that Defendant contemplated Plaintiff's protected actions when deciding to terminate her.[5] Viewing the evidence in the light most favorable to the non-moving party, Plaintiff has met her burden in showing a causal connection between her protected complaints and the adverse action taken against her. A jury could certainly find causation here and, as such, summary judgment is improper.

---

[5] During the termination meeting, it was discussed that Plaintiff … substantiates her claim in the end and the [employee goes] to the EEOC. This is where the problem comes in." (Decl. of Lena J. Bonner, Exhibit 2). The Commissioners further stated that "if you're working for the government you want to protect this government." (Decl. of Lena J. Bonner, Exhibit 2). During the termination discussion, the Commissioners cited to emails concerning Defendant employee, Mr. James Henry. (Decl. of Lena J. Bonner, Exhibit 2 at page 11). The Commission also stated that there has been "substantial cost to this body as a result of the work done out of the EEO office … notwithstanding any litigation that has resulted that we've ultimately ended up settling. (Decl. of Lena J. Bonner, Exhibit 2, at page 15).

## C. DEFENDANT'S ALLEGED BUSINESS REASONS ARE PRETEXTUAL AND A JURY COULD FIND THE BUT-FOR CAUSE OF PLAINTIFF'S TERMINATION TO BE RETALIATORY MOTIVE.

"Once an employee has established a prima facie case, 'the burden shifts to the employer to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the adverse employment action.'" *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015)(quoting *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012)). "If the employer proffers a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the employer's reason is a pretext." *Id.* That is, "the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action." *Combs v. Plantation Patterns, 106 F.3d 1519, 1528* (11th Cir. 1997).

As its legitimate nondiscriminatory reason for Plaintiff's termination, Defendant offers that Plaintiff was terminated based upon various non-protected activities, specifically "sending numerous emails to the Commissioners that were unprofessional and unnecessary; the plaintiff's sending emails at the outset of her EEO investigations and prior to the conclusion of the investigations that breached the confidential nature of the EEO investigative process; the plaintiff's failure to follow the appropriate process of conducting an EEO investigation; the plaintiff's lack of competence in performing her job as evidenced by her performing an investigation of an individual who is not an employee of Augusta that was outside of her authority as an EEO officer; and the plaintiff's not understanding the proper limits of her

authority and not cooperating with others within the government of Augusta."

In general, the alleged reasons for Plaintiff's termination are disputed. For example, while Defendant alleges that Plaintiff was terminated for breaching confidentiality, one Commissioner testified that no confidential information was breached by Plaintiff. (Williams Depo. at p. 30). Similarly, while Defendant voiced an unspecified concern that Plaintiff was not following the EEO process, Mr. Williams testified that the Commission had no proof of Plaintiff not following Defendant's EEO process. (Williams Depo. at pp. 33-34). Mr. Williams went on to testify that Plaintiff was not terminated for not doing her job, and was instead terminated without cause. (Williams Depo. at p. 14, 16). Mr. Lockett seems to agree, as he testified that Plaintiff's job performance was excellent . (Lockett Depo. at pp. 14, 37). To date, Defendant has been unable to voice a clear reason for Plaintiff's termination, mostly referring to vague, unspecific generalizations. To that, when asked in the State of Georgia Department of Labor Separation Notice to provide a reason for Plaintiff's termination and to "state fully and clearly the circumstances of the separation," Defendant stated only "termination." (Plaintiff's Exhibit C). That being said, however, Plaintiff acknowledges the exceedingly light burden placed on defendants, and that by merely stating the above reasons Defendant meets its burden. The record evidence, however, would allow a jury, like the EEOC, to find that the reasons currently set forth by Defendant are pretext for prohibited retaliatory conduct.

1. **DEFENDANT FAILED TO FOLLOW ITS NORMAL DISCIPLINARY PROCEDURES.**

According to the Eleventh Circuit, a plaintiff can show pretext by demonstrating that the employer did not follow its normal procedures in terminating his employment. *See Morrison v.*

*Booth,* 763 F.2d 1366, 1374 (11th Cir.1985)("Departures from normal procedures may be suggestive of discrimination."); *see Ritchie v. Indus. Steel, Inc.,* 426 Fed.Appx. 867, 873 (11th Cir. 2011). Here, Defendant failed to follow its own policy as to Plaintiff's termination. According to Mr. Lockett, Defendant did not follow the proper procedures to terminate Plaintiff, as she should not have been terminated without a prior disciplinary action. (Lockett Depo. at p. 43). According to Defendant's PPPM, Section 300.012, Discipline Guidelines and Procedure, any disciplinary action recommending a suspension, demotion, or termination must be in writing and approved by the HR Director prior to the disciplinary action being imposed. (Plaintiff's Exhibit B at p. 57). As evidenced by the minutes of the termination meeting, such action did not occur with respect to Plaintiff's termination. Defendant's PPPM Section 300.012, Review and Approval Process, further details that an employee's supervisor "shall" notify the employee that formal disciplinary action such as termination is being considered, provide the facts and description of the alleged infraction, and the consequences under consideration. (Plaintiff's Exhibit B at p. 59). After receiving notice of the considered formal disciplinary action, the employee shall be given five (5) working days in which to respond. (Plaintiff's Exhibit B at p. 59). The requisite notice and opportunity to respond did not occur here, and Plaintiff learned of her termination only after the fact through the media. (Depo. of Pl. at pp. 163-164). There is also no evidence explaining the deviation from Defendant's PPPM, as there is no testimony that Plaintiff's termination was considered to be time-sensitive or involved infractions of a "serious nature. (See Decl. of Lena J. Bonner, Exhibit 2; Decl. of Hardie Davis, Jr. at ¶ 4; Decl. of William Fennoy at ¶¶ 4-7; Decl. of Wayne Guilfoyle at ¶¶ 4-6; Decl. of Louis C. ("Hap") Harris at ¶ 4; Decl. of Dennis Williams at ¶¶ 4-5).

## 2.  RETALIATORY REMARKS MADE DURING THE TERMINATION MEETING SHOW PRETEXT.

A plaintiff may also demonstrate pretext by showing that the decision maker made discriminatory remarks. *See Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1362 (11th Cir.1999) (holding that supervisor's statement that he wanted "aggressive, *young* men" like himself to be promoted was "highly suggestive circumstantial evidence" of age discrimination). Such remarks are evidence of pretext because they shed light on the decision maker's state of mind at the time that he made the challenged employment decision. *Id*. Here, evidence of pretext exists through the statements made during the termination meeting that suggest retaliatory animus in direct connection with the termination itself.

During the termination meeting, the Mayor and Commissioners discussed a "series of emails… [sent] over the last week." (Decl. of Lena J. Bonner, Exhibit 2). The Commissioners who voted for Plaintiff now make mention of those same mystery emails as providing a basis for Plaintiff's termination, however no specific emails are mentioned during that meeting or provided as evidence to the affidavits. An exception here is mention of emails concerning Mr. Henry. (Decl. of Lena J. Bonner, Exhibit 2 at page 323). As previously discussed, Plaintiff made a finding in favor for Mr. Henry and against Defendant. That finding was also previously discussed with Plaintiff only days before the termination meeting. This shows retaliatory animus and pretext as to the now alleged non-discriminatory emails, as Defendants also discussed during the termination meeting that Plaintiff … "substantiates her claim in the end and the [employee goes] to the EEOC. This is where the problem comes in." (Decl. of Lena J. Bonner, Exhibit 2). The Commissioners further stated that "if you're working for the government you want to protect

this government" and that there has been "substantial cost to this body as a result of the work done out of the EEO office." (Decl. of Lena J. Bonner, Exhibit 2).

To this, apart from the termination meeting Mr. Lockett stated that his colleagues " used to get on Ms. Humphrey because some of [his] colleagues felt that whenever you as an EEO director or coordinator, whichever one you want to call it, whenever you go out and investigate someone, you're supposed to be investigating on behalf of the government. You're not supposed to be out there trying to find the facts. You're supposed to investigate on behalf of the government." Lockett Depo. at p. 29). Mr. Lockett went on to testify that his colleagues felt that Plaintiff was friendlier to the people she was investigating on behalf of than she was to Defendant. (Lockett Depo. at p. 29). Such statements could allow a jury to find pretext, as the evidence paints a picture that Commissioners contemplated Plaintiff's termination due to the fact that Plaintiff's findings in favor of Defendant employees were not "protecting" the government.

While Defendant argues that the decision makers decided to terminate the plaintiff based upon various non-protected activities, the record evidence shows a dispute as to the validity of those reasons such that a jury could find that retaliation for a protected activity was the sole basis, or but-for cause, for the termination decision.

### V.    CONCLUSION

Considering all evidence in the light most favorable to Plaintiff as the non-movant, there is a genuine dispute as to material facts in this matter that would allow a reasonable jury to return a verdict for Plaintiff. As such, Plaintiff respectfully requests that Defendant's Motion for Summary Judgment be DENIED and that this case be set for trial.

Respectfully submitted, this 24th day of August 2021.

                THE KIRBY G. SMITH LAW FIRM, LLC

                <u>s/Amanda M. Brookhuis</u>
                Amanda Brookhuis
                Georgia Bar No. 601396

4488 N Shallowford Rd.
Suite 105
Dunwoody, GA 30338
Phone: 678-379-7945
Fax: 877-352-6253
amb@kirbygsmith.com

*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this 24th day of August 2021 served all parties in this matter with the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT pursuant to Fed. R. Civ. P. 5(b).

This 24th day of August 2021.

                                        THE KIRBY G. SMITH LAW FIRM, LLC

                                        s/Amanda M. Brookhuis
                                        Amanda Brookhuis
                                        Georgia Bar No. 601396

4488 N Shallowford Rd.
Suite 105
Dunwoody, GA 30338
Phone: 678-379-7945
Fax: 877-352-6253
amb@kirbygsmith.com

*Attorney for Plaintiff*