## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JACQUELINE HUMPHREY,

      Plaintiff,

v.

AUGUSTA, GEORGIA,

      Defendant.

CIVIL ACTION FILE NO.

1:19-cv-00084-JRH-BKE

### PLAINTIFF'S RESPONSE TO DEFENDANT AUGUSTA'S
### STATEMENT OF UNDISPUTED MATERIAL FACTS

1. The plaintiff was hired as Augusta's EEO Coordinator in November 2009. Her offer letter contains her signature accepting the position of EEO Coordinator with an annual salary of $75,127.02. (Exh. "A" – Depo. of Pl. at pp. 28-29 and Depo. Exh. "2".)

**RESPONSE:** Disputed in part. Plaintiff will stipulate that as of the time of her termination from employment she was serving as the EEO Coordinator. It is, however, disputed as to whether Plaintiff was initially as the EEO Coordinator or EEO Director. Plaintiff testified that she was hired as the EEO Director. (Plaintiff's Deposition "Depo. of Pl." at p. 25). The announcement for the job posting stated the position was for EEO Director. (Depo. of Pl. at p. 28). Plaintiff applied for the Director position. (Depo. of Pl. at p. 28). Plaintiff also testified that at some point there was a meeting as to whether she was the EEO Director or EEO Coordinator, as there was a difference in title and what she was actually hired for. (Depo. of Pl. at p. 29). Mr. Lockett testified that Plaintiff served as Defendant's EEO Director. (Deposition of William Lockett "Lockett Depo." at pp. 8-9, 13).

2. Augusta maintains an internal EEO Office as part of its governmental operations in an effort to promote employment diversity and equality. (Exh. "A" – Depo. of Pl. at p. 39 and Depo. Exh. "5".)

**RESPONSE:** Not disputed.

3. In her position, the plaintiff would receive internal EEO Complaints from employees of Augusta containing allegations of unfair employment practices. She would conduct investigations of those Complaints and prepare reports containing her findings on the Complaints as part of her job duties. (Exh. "A" – Depo. of Pl. at pp. 32-43 and Depo. Exh. "4".)

**RESPONSE:** This is disputed to the extent the presentation of Exhibit 4 serves as evidence of Plaintiff's duties while employed by Defendant and to her job title. Plaintiff does not dispute that she would receive and review allegations of unfair employment practices and make appropriate recommendations. (Depo. of Pl. at p. 32).

4. Augusta's Personnel Policies and Procedures Manual ("PPPM") specifies that the investigations should be conducted in a confidential manner. (Exh. "A" - Depo. of Pl. at p. 39 and Depo. Exh. "5" at p. 46.)

**RESPONSE:** Not disputed that the PPPM states as such. Any implication that Plaintiff did not conduct investigations in a confidential manner is disputed as it is not supported by the cited evidence.

5.  Additionally, the plaintiff conducted training classes in the areas of racial and sexual harassment and cultural diversity; served as a mediator to resolve employment related conflicts; presented quarterly reports to the Augusta Commission; provided assistance to applicable departments in complying with EEO guidelines; and performed responsibilities withrespect to compliance with the Americans with Disabilities Act ("ADA"). (Exh. "A" – Depo. of Pl. at pp. 32-34.)

**RESPONSE:**  Not disputed.

6. The plaintiff's position within the government of Augusta was completely separate from the United States Equal Employment Opportunity Commission ("EEOC") and any Charges of Discrimination that an employee might file with that federal agency. (Exh. "A" – Depo. of Pl. at p. 43.)

**RESPONSE:** Disputed as written. It is undisputed that the Defendant EEO position is separate from the EEOC. Plaintiff testified, however, that an employee could file a separate EEOC Charge with the EEOC after filing an EEO Charge. (Depo. of Pl. at p. 43). The evidence also shows that Plaintiff's EEOC findings were sometimes incorporated into the EEOC investigations, as with the case of Evelyn Washington and James Henry. (Depo. of Pl., Exhibit 6; Depo. of Pl. pp. 160-161).

7.  When the plaintiff completed her investigations and issued her internal EEO findings, she would inform the employee who filed the Complaint of her office's finding and inform the

employee of his or her right to file a separate Charge with the federal EEOC, if desired. (Exh. "A" – Depo. of Pl. at pp. 67, 83, 129, and 155.)

**RESPONSE:** Not disputed.

8. The plaintiff did not send her office's findings to the EEOC. (Exh. "A" – Depo. of Pl. at pp. 44-45, 67, 83, 129, and 155.)

**RESPONSE:** Disputed. On at least one occasion, Plaintiff sent her office's findings to the EEOC. (Depo. of Pl. at p. 48-49).

9. If an employee chose to file a separate Charge of Discrimination with the federal EEOC, the PPPM provides that a copy of any such Charge received by Augusta shall be forwarded to the Augusta Law Department for it to determine whether it or the EEO Office should investigate and respond. The PPPM further provides that any response to an EEOC Charge shall be subject to Law Department review and approval prior to being submitted to the EEOC. (Exh. "A" – Depo. of Pl. at pp. 41, 45-47 and Depo. Exh. "5" at p. 48.)

**RESPONSE:** Not disputed.

10. During her tenure, the plaintiff prepared an internal EEO finding regarding an EEO Complaint filed by an Augusta Engineering Department employee, Evelyn Washington. (Exh. "A" – Depo. of Pl. at p. 49.)

**RESPONSE:** Not disputed.

11. After the internal EEO finding, Ms. Washington filed a separate Charge of Discrimination with the EEOC. (Exh. "A" – Depo. of Pl. at p. 49.)

**RESPONSE:** Not disputed.

12. During the course of the EEOC investigation, Jody Smitherman, an attorney in the Augusta Law Department, became aware that the plaintiff had been in contact with the EEOC and had provided documentation to the EEOC prior to the Law Department's being made aware of the EEOC Charge. When Ms. Smitherman sent an internal e-mail to the plaintiff concerning the issue, the plaintiff responded to Augusta's lawyer and copied the EEOC with her response e-mail. (Exh."A" – Depo. of Pl. at pp. 50-54 and Depo. Exhs. "6" and "7".)

**RESPONSE:** Not material; this has not been raised as a reason for Plaintiff's termination. Disputed in part. Plaintiff did not testify that the Law Department was not made aware of the EEOC Charge at this time. (Depo. of Pl. at pp. 48-50). Plaintiff also testified that she did contact the Law Department and provided information regarding Ms. Washington's EEOC Charge. (Depo. of Pl. at p. 50). Plaintiff testified that the Law Department was aware of what her office provided. (Depo. of Pl. at p. 50).

13. The plaintiff's e-mail resulted in Augusta's General Counsel, Andrew MacKenzie, sending the plaintiff a detailed e-mail expressing his concern that the plaintiff had copied the EEOC investigator with her earlier e-mail communication in disregard of the attorney-client privilege and the attorney work product doctrine. (Exh. "A" – Depo. of Pl. at p. 54 and Depo. Exh. "8".)

**RESPONSE:** Disputed in part. It is not disputed that Mr. MacKenzie sent the email at issue, but it is disputed as to whether that was a violation of the attorney-client privilege and the attorney work product doctrine. (Depo. of Pl. at p. 54 and Exhibit 8).

14. Although she is not an attorney, the plaintiff responded to Mr. MacKenzie by citing to him a purported provision of the Federal Rules of Civil Procedure and disputing that there had been any privileged attorney-client communication that she waived by copying the EEOC investigator. (Exh. "A" – Depo. of Pl. at pp. 60-62 and Depo. Exh. "9".)

**RESPONSE:** Not material; this has not been raised as a reason for Plaintiff's termination. Disputed as written. It is undisputed that Plaintiff is not an attorney. Any implication that Plaintiff is not familiar with the Federal Rules of Civil Procedure and privileged associated with attorney-client communication is disputed, as it is not supported by the cited evidence.

15. The plaintiff believed that the Augusta Law Department was interfering with her job in the EEO Office. (Exh. "A" – Depo. of Pl. at p. 63.)

**RESPONSE:** Not disputed.

16. The plaintiff filed Bar Complaints with the State Bar of Georgia against Mr. MacKenzie and Ms. Smitherman based on their allegedly interfering with her ability to do her job. (Exh. "A" – Depo. of Pl. at p. 64.)

**RESPONSE:** Not disputed.

17. The State Bar determined that there was no basis to substantiate the plaintiff's Bar Complaints. (Exh. "A" – Depo. of Pl. at p. 64.)

**RESPONSE:** Not disputed.

18. In late 2013, the plaintiff performed an investigation of an internal EEO Complaint made by Darryl Craig, an employee of the Augusta-Richmond County Library, against the Library's Director, Darlene Price. (Exh. "A" – Depo. of Pl. at pp. 64-67.)

**RESPONSE:** Not disputed.

19. In the course of her investigation, the plaintiff prepared a written memorandum, separate from her case findings, that detailed a number of complaints concerning the Library Director's management style. (Exh. "A" – Depo. of Pl. at p. 67 and Depo. Exh. "11".)

**RESPONSE:** Not disputed.

20. The memorandum contained references to the Library Director as having an "authoritarian management style" and that Library staff had described the Director with such terms as "paranoid," "unprofessional," "condescending," "intimidating," and "derogatory." She copied the memorandum to the Regional Chair of the Augusta Public Library and Augusta Commissioner Mary Davis. (Exh. "A" – Depo. of Pl. at pp. 67-69 and Depo. Exh. "11".)

**RESPONSE:** Disputed as written. The memorandum details what Plaintiff was told by the library staff, and used direct quotes from the library staff interviewed. (Depo. of Pl. at pp. 67-70 and Depo. Exh. "11").

21. Shortly thereafter, Augusta Staff Attorney Jody Smitherman informed the plaintiff that the Augusta EEO Office did not have legal authority to investigate claims of discrimination by employees of the Library System, since those employees were not employees of Augusta, Georgia. She notified the plaintiff that she should withdraw any investigations or findings that had been instigated or provided on behalf of employees of the Library System. (Exh. "A" – Depo. of Pl. at pp. 71-72 and Depo. Exh. "12".)

**RESPONSE:** Not disputed.

22. The plaintiff disagreed with the Law Department's opinion on this issue and responded with a detailed e-mail communication on which she copied the Mayor, the entire Augusta Commission, and the Commission's Deputy Clerk. (Exh. "A" – Depo. of Pl. at pp. 72-74 and Depo. Exh. "13".)

**RESPONSE:** Not disputed. As EEO Coordinator Plaintiff reported directly to the Mayor and the entire Augusta Commission. (Depo. of Pl. at p. 73).

23. In 2014, the plaintiff completed her investigation into an internal EEO Complaint by Roy Searles, a Recreation and Parks Department employee, and issued her Case Determination. (Exh. "A" – Depo. of Pl. at pp. 75-76 and Depo. Exh. "14".)

**RESPONSE:** Not disputed.

24. In her Case Determination, the plaintiff concluded that Mr. Searles' allegation of race-based pay disparity was unfounded. However, she went on to detail that she received an e-mail from

Lonnie Wimberly, the Deputy Director-Facilities, to several employees concerning interactions with the EEO Office, which she stated constituted intentional interference with her office's operations. (Exh. "A" – Depo. of Pl. at pp. 78-80 and Depo. Exh. "16".)

**RESPONSE:** Not disputed.

25. The plaintiff believed Mr. Wimberly's e-mail created problems for her office and interfered with her office's ability to do its job. (Exh. "A" – Depo. of Pl. at pp. 78 and 81.)

**RESPONSE:** Not disputed.

26. The plaintiff took it upon herself to send her EEO Determination to 17 separate individuals, including the Mayor, 10 Commissioners, and six employees of Augusta, including the complaining party, Mr. Searles, to provide "guidance on expected conduct regarding the Equal Opportunity Office." (Exh. "A" – Depo. of Pl. at p. 84 and Depo. Exh. "15".)

**RESPONSE:** Disputed as written, as the phrase "took it upon herself" suggests that Plaintiff was not permitted to do so. Such a suggestion is not supported by the evidence cited. Further, Plaintiff reported directly to the Mayor and the entire Augusta Commission. (Depo. of Pl. at p. 73).

27. The following day, May 23, 2014, the plaintiff submitted an EEOC Intake Questionnaire for a Charge of Discrimination she was filing with the EEOC over Mr. Wimberly's e-mail. (Exh. "A" – Depo. of Pl. at p. 96 and Depo. Exh. "18".)

**RESPONSE:** Not disputed.

28. In the Intake Questionnaire, the plaintiff provided the EEOC with the wrong address for her employer, the City of Augusta. Instead of providing the EEOC with the correct zip code of 30901, she provided the incorrect zip code of 30809, which is the zip code for Evans, Georgia, 15 miles away in a separate county. (Exh. "A" – Depo. of Pl. at pp. 96-99 and Depo. Exh. "18".)

**RESPONSE:** Not disputed.

29. Several weeks later, the plaintiff signed a formal Charge of Discrimination prepared by the EEOC from the information contained in the Intake Questionnaire. The plaintiff signed the Charge of Discrimination on June 23, 2014 under penalty of perjury and listed her employer as "City of Augusta, 530 Greene Street, Evans, GA 30809." (Exh. "A" – Depo. of Pl. at pp. 99-102 and Depo. Exh. "19".)

**RESPONSE:** Not disputed.

30. The EEOC Charge specified that Mr. Wimberly's e-mail was the basis of her claim of retaliation because "it limits [her] ability to perform [her] position effectively." (Exh. "A" – Depo. of Pl. at pp. 99-101 and Depo. Exh. "19".)

**RESPONSE:** Not disputed.

31. The plaintiff's 2014 EEOC Charge fails to allege that she suffered any adverse employment action. She simply alleges that an e-mail from an employee, and not a supervisor or anyone who evaluated her performance, was an adverse employment action. (Exh. "A" - Depo. of Pl. at pp. 99-101 and Depo. Exh. "19.")

**RESPONSE:** Not disputed.

32. The EEOC told the plaintiff that "no adverse action had occurred as it relates to [her] Charge." (Exh. "A" – Depo. of Pl. at pp. 104-105 and Depo. Exh. "18".)

**RESPONSE:** Not disputed.

33. On July 3, 2014, the EEOC issued its Determination and Right to Sue Notice concerning the plaintiff's Charge. It mailed Augusta's copy to "Tanika Bryant, Human Resources Director, City of Augusta, Evans, GA 30809." (Exh. "A" – Depo. of Pl. at pp. 102-103 and Depo. Exh. "20".)

**RESPONSE:** Not disputed.

34. Augusta did not receive a copy of the Dismissal and Right to Sue Notice. (Exh. "B" – Decl. of Jody M. Smitherman at ¶ 11; Exh. "C" – Decl. of Andrew G. MacKenzie at ¶ 11; Exh. "D" – Decl. of Hardie Davis, Jr. at ¶ 6; Exh. "E" – Decl. of William Fennoy at ¶ 9; Exh. "F" – Decl. of Wayne Guilfoyle at ¶ 8; Exh. "G" – Decl. of Louis C. ("Hap") Harris at ¶ 6; Exh. "H" – Decl. of Sammie Sias at ¶ 7; Exh. "I" – Decl. of Dennis Williams at ¶ 7.)

**RESPONSE:** Disputed. Mr. Lockett testified that there was a conversation in a legal session that Plaintiff had filed with the EEOC. (Lockett Depo. at pp. 31-32).

35. The Right to Sue Notice specified that the plaintiff had 90 days to file suit. (Exh. "A" – Depo. of Pl. at pp. 102-103 and Depo. Exh. "20".)

**RESPONSE:** Not disputed.

36. The plaintiff did not file suit within 90 days of her receipt of the Right to Sue Notice concerning her 2014 EEOC Charge. ("Exh. "A" - Depo. of Pl. at pp. 102-103 and 107 and Depo. Exh. "20".)

**RESPONSE:** Disputed in part. Plaintiff did not file suit on the allegations outlined in her 2014 EEOC Charge.

37. The plaintiff chose not to file suit. (Amended Complaint at ¶ 24; Exh. "A" – Depo. of Pl. at p. 107.)

**RESPONSE:** Disputed in part. Plaintiff did not file suit on the allegations outlined in her 2014 EEOC Charge.

38. In early 2015, the plaintiff investigated a maintenance employee within the Recreation Department for alleged derogatory comments. (Exh. "A" – Depo. of Pl. at p. 121.)

**RESPONSE:** Not disputed.

39. As part of the investigation, the plaintiff ordered a drug test of the employee. (Exh. "A" – Depo. of Pl. at p. 122.)

**RESPONSE:** Disputed. Plaintiff testified that her office ordered a drug test with direction from the Administrator, Ms. Janet Jackson. (Depo. of Pl. at pp. 122-125)

40. The PPPM requires that for-cause drug tests be managed by Augusta's Risk Management Manager. (Exh. "J" - Decl. of Lena J. Bonner at ¶ 4 and Decl. Exh. "1" at pp. 166- 167.)

**RESPONSE:** Not disputed.

41. After questions arose concerning the administration of the drug test, Augusta requested that it be canceled. (Exh. "B" - Decl. of Jody M. Smitherman at ¶ 9 and Decl. Exh. "8".)

**RESPONSE:** Not disputed; not material, as it was ordered by the Administrator, Ms. Janet Jackson. (Depo. of Pl. at pp. 122-125)

42. Shortly thereafter, the plaintiff sent an e-mail to the Mayor, all Commissioners, attorneys Andrew MacKenzie and Jody Smitherman, and Augusta's Administrator stating, "Per the request to meet with the Administrator this morning at 0930, she informed me that the commission has requested that the EEO office stop the investigation regarding 'racial slurs' in the workplace which involves the facility maintenance department within recreation. I was informed that the commission does not want the investigation to be 'tainted'." (Exh. "B" - Decl. of Jody M. Smitherman at ¶ 10 and Decl. Exh. "9".)

**RESPONSE:** Disputed in part. Any implication that this was improper is disputed. The drug test was ordered by the Administrator, Ms. Janet Jackson. (Depo. of Pl. at pp. 122-125). Further, Plaintiff reported directly to the Mayor and the entire Augusta Commission. (Depo. of Pl. at p. 73).

43. In late January 2015, the plaintiff undertook an investigation of an EEO Complaint made by an employee, Lori Howard, concerning promotion to a position within the Environmental Services Department. (Exh. "A" – Depo. of Pl. at pp. 151-157 and Depo. Exhs. "35" and "36".)

**RESPONSE:** Not disputed.

44. As part of her investigation, the plaintiff convened a meeting of various individuals, including Mark Johnson, the Director of the Environmental Services Department, Ms. Howard, and herself. (Exh. "A" – Depo. of Pl. at p. 135 and Depo. Exh. "30".)

**RESPONSE:** Not disputed.

45. Following that meeting, a number of individuals raised concerns about the meeting and the plaintiff's investigation. (Exh. "A" – Depo. of Pl. at pp. 136-150 and Depo. Exhs. 31-34.)

**RESPONSE:** Not material; this has not been raised as a reason for Plaintiff's termination.

46. Those individuals included Tanika Bryant, HR Director, and Mr. Johnson. In particular, Mr. Johnson complained of the plaintiff's sharing information regarding Ms. Howard's confidential Complaint with Lori Myles, a member of a completely separate entity, the Richmond County Board of Education. (Exh. "A" – Depo. of Pl. at pp. 150-151 and Depo. Exh. "34".)

**RESPONSE:** Not material; this has not been raised as a reason for Plaintiff's termination.

47. After the plaintiff issued her findings regarding Ms. Howard's Complaint, Ms. Howard herself registered dissatisfaction with how the plaintiff handled the matter. (Exh. "A" – Depo. of Pl. at pp. 156-157 and Depo. Exh. "36".)

**RESPONSE:** Not material; this has not been raised as a reason for Plaintiff's termination.

48. On March 30, 2015, the Augusta Commission met in a called meeting. During the course of the meeting, the Commission went into Executive Session to discuss personnel matters,

including numerous performance issues with the plaintiff. (Exh. "J" – Decl. of Lena J. Bonner at ¶ 5 and Decl. Exh. "2.")

**RESPONSE:** This is a compound statement, and is disputed in part. Undisputed that on March 30, 2015, the Augusta Commission met in a called meeting. Disputed as to the statement they met to discuss "numerous performance issues," as that is not reflected by the evidence. (Exh. "J" – Decl. of Lena J. Bonner, Decl. Exh. "2.")

49. The performance issues discussed by the Commission were: (1) the plaintiff's sending numerous "blast" e-mails to the Commissioners that were unprofessional and unnecessary; (2) the plaintiff's sending emails both to the Commissioners and to other individuals at the outset of her EEO investigations and prior to the conclusion of the investigations that breached the confidential nature of the EEO investigative process; (3) the plaintiff's failure to follow the appropriate process of conducting an EEO investigation; (4) the plaintiff's lack of competence in performing her job as evidenced by her performing an investigation of an individual who was not an employee of Augusta that was outside of her authority as an EEO officer; and (5) the plaintiff's not understanding the proper limits of her authority and not cooperating with others within the government of Augusta, as evidenced by her investigating matters unrelated to EEO issues, her filing Bar complaints against attorneys employed by the Augusta Law Department, and her ordering a drug test of an Augusta employee, even though ordering such a test was not part of her job duties or responsibilities. (Exh. "D" – Decl. of Hardie Davis, Jr. at ¶ 4; Exh. "E" – Decl. of William Fennoy at ¶ ¶ 4-7; Exh. "F" – Decl. of Wayne Guilfoyle at ¶ ¶ 4-6; Exh. "G" –

Decl. of Louis C. ("Hap") Harris at ¶ 4; Exh "I" – Decl. of Dennis Williams at ¶ ¶ 4-5; Exh. "J" –

Decl. of Lena J. Bonner at ¶ 5 and Decl. Exh. "2.")

**RESPONSE:**  Disputed, as the sworn declarations do not accurately reflect the actual discussion

from March 30, 2015, which is evidenced by the meeting transcript. Further disputed, as the

evidence shows a dispute as to whether these were the true reasons for termination. Mr. Lockett

testified that Plaintiff's job performance was excellent and she was competent. (Lockett Depo. at

pp. 14, 37). Mr. Lockett further testified that during her employment, Plaintiff would be called

into a legal session and rebuked for taking EEO action against a friend or acquaintance of one of

the sitting Commissioners. (Lockett Depo. at p. 27). Mr. Lockett observed that his colleagues felt

that Plaintiff was friendlier to the people she was investigating on behalf of than she was to

Defendant. (Lockett Depo. at p. 29). Further, during Plaintiff's employment, she was never

counseled, reprimanded or placed on a work performance [plan]. (Lockett Depo. at p. 34).

Finally, according to Mr. Lockett, Defendant did not follow the proper procedures to terminate

Plaintiff, as she should not have been terminated without a prior disciplinary action. (Lockett

Depo. at p. 43).

50. The Commission then went into open session and voted to terminate the plaintiff. (Exh. "J"

–Decl. of Lena J. Bonner at ¶ 6 and Decl. Exh. "3" at p. 2.)

**RESPONSE:**  Not disputed.

51. Following her termination, the plaintiff filed a Charge of Discrimination with the EEOC. In

her Charge, the plaintiff claimed that her termination was in retaliation for her performing her

job duties as an EEO officer and for filing a previous Charge of Discrimination in 2014. (Exh. "A" – Depo. of Pl. at pp. 165-166, 171-172, 176-177, and Depo. Exhs. "39" and "40".)

**RESPONSE:** Disputed in part as this is a compound statement. Not disputed that Plaintiff filed a Charge of Discrimination with the EEOC. Disputed as to the extent this evidence states that Plaintiff's job duties included making finding of discrimination against Defendant, which is not supported by the evidence.

52. The plaintiff contends that her opposition to alleged discriminatory treatment of Augusta employees, which arose out of the plaintiff's job activities as an EEO officer, constituted protected activities under the opposition clause of Title VII. (Amended Complaint at ¶ 42.)

**RESPONSE:** Disputed. The cited evidence does not support that her objections "arose out of the plaintiff's job activities as an EEO officer."

53. The plaintiff testified that the protected activities she engaged in were in the performance of her job duties: [A] retaliation claim may be established if the complainant engaged in any prior EEO activity, from which the retaliation claims arise. I strongly believe that performing my job duties as EEO Director satisfies this requirement because the nature of my job is to investigate Title VII discrimination. (Exh. "A" – Depo. of Pl. at pp. 90-91 and Depo. Exh. "17" - emphasis in original.)

**RESPONSE:** Disputed, as this misstates evidence. The cited evidence and statements were not Plaintiff's testimony as to the present litigation or Plaintiff's most recent EEOC Charge.

54. When the plaintiff submitted her Intake Questionnaire to the EEOC as part of filing her 2015 Charge of Discrimination after her termination, the plaintiff stated, "I have been retaliated for doing my job which involves providing finding of discrimination." (Exh. "A" – Depo. of Pl. at p. 171 and Depo. Exh. "40" at p. 4.)

**RESPONSE:** Disputed in part. Plaintiff's testimony shows that making an adverse finding against Defendant that discrimination occurred was not part of her job duties. (Depo. of Pl. at p. 32-33).

55. At her deposition, the plaintiff testified:

[Q] So you believe you were retaliated against for simply doing your job? [A] Yes.

(Exh. "A" – Depo. of Pl. at p. 172; see also, Depo. of Pl. at pp. 176-178.)

**RESPONSE:** Not disputed that Plaintiff testified as such. Disputed (and objected to) that such testimony is affirmative evidence supporting a specific legal conclusion, as Plaintiff is not an attorney.

56. The plaintiff asserts that her participation in the EEO process of other employees constitutes a protected activity under Title VII. (Amended Complaint at ¶ 41.)

**RESPONSE:** Not disputed. Plaintiff's testimony shows that making an adverse finding against Defendant that discrimination occurred was not part of her job duties. (Depo. of Pl. at p. 32-33.)

57. The plaintiff's claim in this regard is based upon her participation in the internal EEO processes of other employees. Specifically, she claims that her investigation into several internal

EEO Complaints and her findings related to these Complaints are protected activities. (Amended Complaint at ¶¶ 13-18, 25-26, 30-31 and 41.)

**RESPONSE:** Disputed. Disputed as to the extent that this argues that Plaintiff only brings claims under the Participation clause by the use of the word "participation." Not disputed that Plaintiff claims that making adverse findings that discrimination occurred after her investigations, which is not a job duty, is a protected activity.

58. The plaintiff alleges that her participation in the EEOC process by filing a claim of retaliation in 2014 (her "2014 EEOC Charge") constitutes a protected activity from which she may assert a claim of retaliation under Title VII. (Amended Complaint at ¶ 43.)

**RESPONSE:** Not disputed.

59. The decisionmakers decided to terminate the plaintiff based upon various non-protected activities - - the plaintiff's sending numerous e-mails to the Commissioners that were unprofessional and unnecessary; the plaintiff's sending e-mails at the outset of her EEO investigations and prior to the conclusion of the investigations that breached the confidential nature of the EEO investigative process; the plaintiff's failure to follow the appropriate process of conducting an EEO investigation; the plaintiff's lack of competence in performing her job as evidenced by her performing an investigation of an individual who is not an employee of Augusta that was outside of her authority as an EEO officer; and the plaintiff's not understanding the proper limits of her authority and not cooperating with others within the government of Augusta. (Exh. "D" – Decl. of Hardie Davis, Jr. at ¶ 4; Exh. "E" – Decl. of William Fennoy at ¶¶ 4-7; Exh. "F" – Decl. of Wayne Guilfoyle at ¶ ¶ 4-6; Exh. "G" – Decl. of Louis C. ("Hap")

Harris at ¶ 4; Exh "I" – Decl. of Dennis Williams at ¶ ¶ 4-5; Exh. "J" – Decl. of Lena J. Bonner at ¶ 5 and Decl. Exh. "2.")

**RESPONSE:** Disputed, as the evidence shows a dispute as to whether these were the true reasons for termination. During the termination meeting, it was discussed that Plaintiff … "substantiates her claim in the end and the [employee goes] to the EEOC. This is where the problem comes in." (Decl. of Lena J. Bonner, Exhibit 2). The Commissioners further stated that "if you're working for the government you want to protect this government." (Decl. of Lena J. Bonner, Exhibit 2). During the termination meeting, it was also stated that there has been "substantial cost to this body as a result of the work done out of the EEO office … notwithstanding any litigation that has resulted that we've ultimately ended up settling. (Decl. of Lena J. Bonner, Exhibit 2, at page 15).

Contrary to Defendant's allegations of a poor performance, Mr. Lockett testified that Plaintiff's job performance was excellent and she was competent. (Lockett Depo. at pp. 14, 37). Mr. Lockett further testified that during her employment, Plaintiff would be called into a legal session and rebuked for taking EEO action against a friend or acquaintance of one of the sitting Commissioners. (Lockett Depo. at p. 27). Mr. Lockett observed that his colleagues felt that Plaintiff was friendlier to the people she was investigating on behalf of than she was to Defendant. (Lockett Depo. at p. 29). Further, during Plaintiff's employment, she was never counseled, reprimanded or placed on a work performance [plan]. (Lockett Depo. at p. 34). Finally, according to Mr. Lockett, Defendant did not follow the proper procedures to terminate Plaintiff, as she should not have been terminated without a prior disciplinary action. (Lockett Depo. at p. 43). Similarly, Mr. Williams testified that Plaintiff was not terminated for not doing

her job, and was terminated without cause. (Williams Depo. at p. 14, 16). Mr. Williams also testified that no confidential information was breached by Plaintiff. (Williams Depo. at p. 30). Mr. Williams similarly testified that the Commission had no proof of Plaintiff not following Defendant's EEO process. (Williams Depo. at pp. 33-34).

60. The decisionmakers who terminated the plaintiff had no knowledge of the plaintiff's 2014 EEOC Charge until after her termination on March 30, 2015. (Exh. "B" – Decl. of Jody M. Smitherman at ¶ 11; Exh. "C" – Decl. of Andrew G. MacKenzie at ¶ 11; Exh. "D" – Decl. of Hardie Davis, Jr. at ¶ 6; Exh. "E" – Decl. of William Fennoy at ¶ 9; Exh. "F" – Decl. of Wayne Guilfoyle at ¶ 8; Exh "G" – Decl. of Louis C. ("Hap") Harris at ¶ 6; Exh. "H" – Decl. of Sammie Sias at ¶ 7; Exh. "I" – Decl. of Dennis Williams at ¶ 7.)

**RESPONSE:** Disputed. Mr. Lockett testified that there was a conversation in a legal session that Plaintiff had filed with the EEOC. (Lockett Depo. at pp. 31-32).

61. The decisionmakers were not aware of the plaintiff's earlier 2014 EEOC Charge of Discrimination at the time they voted to terminate her and did not take any action against the plaintiff for either opposing an employment practice made unlawful under Title VII or participating in a protected activity. (Exh. "B" – Decl. of Jody M. Smitherman at ¶ 11; Exh. "C" – Decl. of Andrew G. MacKenzie at ¶ 11; Exh. "D" – Decl. of Hardie Davis, Jr. at ¶¶ 5-6; Exh. "E" – Decl. of William Fennoy at ¶¶ 8-9; Exh. "F" – Decl. of Wayne Guilfoyle at ¶¶ 7-8; Exh. "G" – Decl. of Louis C. ("Hap") Harris at ¶¶ 5-6; Exh. "H" – Decl. of Sammie Sias at ¶¶ 6-7; Exh. "I" – Decl. of Dennis Williams at ¶¶ 6-7.)

**RESPONSE:** Disputed. Objection, as this is a compound fact. Mr. Lockett testified that there was a conversation in a legal session that Plaintiff had filed with the EEOC. (Lockett Depo. at pp. 31-32). Disputed that Defendant "did not take any action against the plaintiff for either opposing an employment practice made unlawful under Title VII or participating in a protected activity." During the termination meeting, it was discussed that Plaintiff … "substantiates her claim in the end and the [employee goes] to the EEOC. This is where the problem comes in." (Decl. of Lena J. Bonner, Exhibit 2). The Commissioners further stated that "if you're working for the government you want to protect this government." (Decl. of Lena J. Bonner, Exhibit 2). During the termination meeting, it was also stated that there has been "substantial cost to this body as a result of the work done out of the EEOC office … notwithstanding any litigation that has resulted that we've ultimately ended up settling. (Decl. of Lena J. Bonner, Exhibit 2, at page 15).

Mr. Lockett testified that Plaintiff's job performance was excellent and she was competent. (Lockett Depo. at pp. 14, 37). Mr. Lockett further testified that during her employment, Plaintiff would be called into a legal session and rebuked for taking EEO action against a friend or acquaintance of one of the sitting Commissioners. (Lockett Depo. at p. 27). Mr. Lockett observed that his colleagues felt that Plaintiff was friendlier to the people she was investigating on behalf of than she was to Defendant. (Lockett Depo. at p. 29). Further, during Plaintiff's employment, she was never counseled, reprimanded or placed on a work performance [plan]. (Lockett Depo. at p. 34). Finally, according to Mr. Lockett, Defendant did not follow the proper procedures to terminate Plaintiff, as she should not have been terminated without a prior disciplinary action. (Lockett Depo. at p. 43). Similarly, Mr. Williams testified that Plaintiff was

not terminated for not doing her job, and was terminated without cause. (Williams Depo. at p. 14, 16). Mr. Williams also testified that no confidential information was breached by Plaintiff. (Williams Depo. at p. 30). Mr. Williams testified that the Commission had no proof of Plaintiff not following Defendant's EEO process. (Williams Depo. at pp. 33-34).

62. The Executive Session Minutes from the Commission's March 30, 2015 meeting when it voted to terminate the plaintiff are devoid of any reference to a 2014 Charge of Discrimination. (Exh. "J" – Decl. of Lena J. Bonner at ¶ 5 and Decl. Exh. "2".)

**RESPONSE:** Undisputed.

This 24th day of August, 2021.

THE KIRBY G. SMITH LAW FIRM, LLC

s/Amanda M. Brookhuis
Amanda Brookhuis
Georgia Bar No. 601396

4488 N Shallowford Rd.
Suite 105
Dunwoody, GA 30338
Phone: 678-379-7945
Fax: 877-352-6253
amb@kirbygsmith.com

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 24th day of August, 2021, served all parties in this matter with the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT AUGUSTA'S UNDISPUTED STATEMENT OF MATERIAL FACTS pursuant to Fed. R. Civ. P. 5(b).

This 24th day of August, 2021.

THE KIRBY G. SMITH LAW FIRM, LLC

<u>s/Amanda M. Brookhuis</u>
Amanda Brookhuis
Georgia Bar No. 601396

4488 N Shallowford Rd.
Suite 105
Dunwoody, GA 30338
Phone: 678-379-7945
Fax: 877-352-6253
amb@kirbygsmith.com

*Attorney for Plaintiff*