IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| JACQUELINE HUMPHREY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 119-084 |
| | * | |
| AUGUSTA, GEORGIA, | * | |
| | * | |
| Defendant. | * | |

**O R D E R**

Before the Court is Defendant's motion for summary judgment. (Doc. 40.)  For the reasons that follow, Defendant's motion is **GRANTED**.

**I. BACKGROUND**

This case involves a Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") dispute in which Plaintiff alleges unlawful retaliation by Defendant – her former employer, Augusta, Georgia – for several activities she undertook during the course of her employment from December 2009 until March 2015.  (Doc. 12.)  Defendant hired Plaintiff to work in its Equal Employment Opportunity ("EEO") Office, although her precise title is a subject of dispute.[1]  (Id. at 2.)  Plaintiff's job was to

---

[1] Plaintiff claims she was hired as "EEO Director," but was eventually demoted to "EEO Coordinator"; Defendant claims Plaintiff was always the "EEO Coordinator." (Doc. 49, at 4; Doc. 43, at 1.)  Plaintiff now stipulates "she

investigate EEO claims raised by Defendant's employees, make factual findings, and propose corrective actions to Defendant, as well as to conduct trainings about diversity, racial and sexual harassment and to conduct mediations. (Doc. 49, at 4; Doc. 44-1, at 34.) Plaintiff's role and Defendant's EEO office are distinct from the Federal Equal Employment Opportunity Commission (the "EEOC"), and while the EEOC eventually became involved in this dispute, Plaintiff had no formal relationship with that entity within her role as EEO Coordinator. (Doc. 43, at 2; Doc. 44-1, at 49-50.) Instead, the dispute here focuses on EEO claims raised by several of Defendant's employees and Plaintiff's investigations and subsequent actions related thereto, as well as two EEOC Charges ultimately filed by Plaintiff herself. The dispute began with four separate EEO investigations performed by Plaintiff.

First, Plaintiff alleges she prepared an internal EEO finding regarding a gender discrimination charge filed by Ms. Evelyn Washington. (Doc. 43, at 2.) After receiving that internal EEO finding, Ms. Washington filed a separate charge of discrimination ("Charge") with the EEOC. (Id.) Some time thereafter, the EEOC investigator contacted Defendant, who allegedly failed to respond. (Doc. 49, at 5.) Plaintiff herself then exchanged emails with the EEOC investigator "because [the EEOC] could not get a response

---

was employed by Defendant as the EEO Coordinator during the relevant time period and at the time of her termination." (Doc. 49, at 4.)

2

from [Defendant's] law department." (Doc. 44-1, at 58.) After Defendant's general counsel had communicated with the EEOC, Plaintiff continued to communicate with the EEOC, including when Plaintiff copied the EEOC investigator on internal communications related to the investigation. (Id. at 50-56.) In May 2014, after the investigation, Plaintiff claims she "issued a memo that detailed her opposition to the unlawful employment practices by Defendant's legal counsel which violated Title VII, and that Plaintiff suffered retaliation as a consequence." (Doc. 49, at 5.)

Second, "on May 15, 2014, Plaintiff noted in a case determination for Defendant employee Mr. Roy Searles that she perceived certain actions of Human Resources and Mr. Searles supervisor to be retaliatory." (Id.; Doc. 44-1, at 76-84.) Plaintiff claims that a few days later, her title was changed from EEO Director to EEO Coordinator, which affected her retirement vesting status; thus, Plaintiff herself filed an EEOC complaint on May 23, 2014. (Doc. 49, at 5; Doc. 44-1, at 284-87; Doc. 12, ¶¶ 18-22.) She "received a Dismissal and Notice of Rights" on July 3, 2014, and "chose not to pursue the claim further." (Doc. 12, ¶¶ 23-24.)

Third, on March 24, 2015, the Mayor informed Plaintiff that Mr. James Henry, another of Defendant's employees, "refused to settle his EEOC case because the [EEOC] investigator substantiated

3

Mr. Henry's claims . . . because of Plaintiff's findings." (Doc. 49, at 6.) Plaintiff's findings in the case "revealed that his allegations of Title VII violations were founded." (Id.)

And fourth, on March 25, 2015, "Plaintiff substantiated another employee's allegations against Defendant" – those of Ms. Lori Howard. (Id.) Plaintiff sent that finding "to all Defendant Commissioners." (Id.) Then, five days later, the Defendant's Commissioners called a "special meeting," during which Plaintiff was fired. (Id.; Doc. 12, ¶¶ 31-33.) Plaintiff alleges she was fired because she substantiated Defendant's employees' claims, which assisted the employees before the EEOC and created a "substantial cost" to Defendant, "notwithstanding any litigation that has resulted that [Defendant] ultimately ended up settling." (Doc. 49, at 6-7.) Plaintiff subsequently filed a second charge of retaliation with the EEOC on April 3, 2015. (Doc. 12, ¶ 37.) After "the EEOC found reason to believe that Defendant terminated Plaintiff in retaliation for engaging in protected activity" on May 30, 2018, "Plaintiff received her Notice of Right to Sue on March 18, 2019." (Id. ¶¶ 38-39.) Plaintiff filed this suit eighty days later, alleging Title VII retaliation based on her "participation in the EEO process of other employees," "opposition to the discriminatory treatment of Defendant's employees," "participation in the EEOC process by filing her own claim of retaliation," and termination. (Id. ¶¶ 41-45.) Defendant,

4

however, moves for summary judgment, claiming Plaintiff has failed to state a prima facie case of retaliation and that her claims fail as a matter of law, among other reasons. (Doc. 40.)

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court may not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court the basis for its motion by reference to materials in the record.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proof at trial, as Plaintiff does here, the movant has two options as to how it can carry its initial burden. Id. at 1115-16. The movant may demonstrate an absence of evidence to support the nonmovant's case, or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. Id.

If the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. The non-movant must tailor its response to the method by which the movant carries its initial burden. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th

6

Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court provided all parties notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 42.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied. The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration.

### III. DISCUSSION

There are two clauses of the anti-retaliation provision of Title VII: the "opposition clause," as discussed below, and the "participation clause." Crawford v. Metro. Gov't. of Nashville and Davidson Cnty., 555 U.S. 271, 276 (2009). Plaintiff, however, concedes that summary judgment is appropriate on her claim for retaliation under the participation clause.[2] Based on this, summary judgment is **GRANTED** as to retaliation under the participation clause. Plaintiff's only remaining claim alleges Title VII retaliation under the opposition clause, which the Court addresses below.

---

[2] Plaintiff also concedes her claim for punitive damages. (Doc. 49, at 1 n.1.)

"Under the opposition clause, an employer may not retaliate against an employee because the employee has opposed . . . an unlawful employment practice." <u>EEOC v. Total Sys. Servs., Inc.</u>, 221 F.3d 1171, 1174 (11th Cir. 2000) (citing 42 U.S.C. § 2000e-3(a)). The opposition clause provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

In Title VII retaliation actions, the plaintiff "must 'carry the initial burden under the statute of establishing a prima facie case.'" <u>Brush v. Sears Holdings Corp.</u>, 466 F. App'x 781, 785-86 (11th Cir. 2012) (quoting <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973)). If the Plaintiff does so, the Defendant then must show "some legitimate, non-discriminatory reason" for the employment action. <u>Id.</u> at 786 (internal citation and quotation omitted). Then, if the Defendant does so, the Plaintiff must make a showing of pretext regarding Defendant's stated reasons for the employment action. <u>Id.</u> (internal citation and quotation omitted). Only upon that showing does the Plaintiff's claim survive.

"A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity

8

protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008) (citation omitted). Here, Defendant argues Plaintiff has failed to establish a prima facie case because her opposition to the alleged discriminatory treatment of Defendant's employees does not constitute an activity protected under Title VII. (Doc. 43, at 10.) Defendant further argues that even if Plaintiff has made a *prima facie* showing, "[she] was terminated for legitimate, non-retaliatory reasons." (Id. at 22-23.) Plaintiff counterargues that her activity was protected under Title VII, that there is a causal link between her protected activity and her firing, and that her firing was pretextual. (Doc. 49, at 12-14.)

The first element of a prima facie case requires that Plaintiff engaged in protected activity. Crawford v. Carroll, 529 F.3d at 970. Protected activity is "a practice made unlawful by Title VII." Brush, 466 F. App'x at 786 (quoting 42 U.S.C. § 2000e-3(a) (internal quotations omitted)). Said differently, the employee must 'oppose' an unlawful employment practice. Here, Plaintiff alleges she engaged in several protected activities. First, she alleges that her "participation in the EEO process of other employees constitute[d] protected activit[y] under Title VII," (Doc. 12, ¶ 41), and that her "opposition to the

9

discriminatory treatment of Defendant's employees via her findings in multiple claims and related discussions with Commissioners and the Mayor constitute[d] protected activit[y]" (Id. ¶ 42). Second, she alleges her own participation in the EEOC process "by filing her own claim of retaliation" – specifically, her claim that her change of title on June 24, 2014 was retaliatory, and that her firing was in retaliation for raising the first claim – constitutes protected activity. (Id. ¶¶ 22, 43.)  If any of these activities constitute protected activity under Title VII, Plaintiff will have satisfied the first element of a prima facie case.  The Court will address each alleged protected activity in turn.

**A. Plaintiff's Participation in the EEO Claims of Others**

As described above, Plaintiff worked as Defendant's EEO Coordinator. (Doc. 49, at 4.)  "Plaintiff's duties required her to conduct investigations, prepare investigative reports, and propose corrective action to the Commission." (Id.)  Now, Plaintiff alleges that by going "beyond the internal investigation process" and making "findings of discrimination in favor of employees, against the interests of Defendant," Plaintiff engaged in oppositional, protected activity. (Id. at 10.)

To determine whether claims "not just [by] those directly impacted by workplace discrimination[,] but [by] all individuals involved in the investigation of that discrimination" constitute protected activity, courts in this circuit apply the "manager

10

rule." Brush, 466 F. App'x at 787. The rule holds that when a management employee, "in the course of her normal job performance, disagrees with or opposes the actions of an employer," that disagreement does not equate to protected activity. Id. (citations omitted). "Instead, [for an employee's actions to] qualify as 'protected activity' an employee must cross the line from being an employee 'performing her job . . . to an employee lodging a personal complaint.'" Id. (citation omitted). Brush's adoption of the manager rule clarified Crawford v. Carroll, in which the Supreme Court held that "[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity." Metro. Gov't. of Nashville, 555 U.S. at 276 (internal quotations omitted). Specifically, the Eleventh Circuit held that "[Crawford] did not address whether a disinterested party to a harassment claim could use that harassment claim as its own basis for a Title VII action." Brush, 466 F. App'x at 787. Here, Plaintiff is a disinterested party to the underlying harassment claims she investigated. She seeks to substantiate her present Title VII claim by using her findings in those harassment investigations as protected activity. Thus, the Court must apply the manager rule.

In doing so, the Court finds that Plaintiff's actions do not amount to protected activity. Like the Brush plaintiff, Plaintiff

11

here, "[i]n her capacity as an investigator of [Title VII] claim[s] . . . informed [Defendant] of [each claimant's] allegations, investigated those allegations, and reported the results of her investigation[s] to [Defendant]." Id. While Plaintiff argues her "adverse findings against Defendant are separate from the investigations that were part of her normal job performance," and that those "adverse findings . . . and clear opposition to certain practices" give rise to protected activity, she admits her job duties included "prepar[ing] investigative reports[] and propos[ing] corrective action to the Commission." (Doc. 49, at 4, 11.) Preparing an investigative report and proposing corrective actions to Defendant contemplates - at least impliedly, if not explicitly - a potential finding by Plaintiff that Defendant engaged in discriminatory practices. And as the Eleventh Circuit held in Brush, "[d]isagreement with internal procedures does not equate with 'protected activity' opposing discriminatory practices." Brush, 466 F. App'x at 787.

Plaintiff also counterargues that she is not a "manager," and that the manager rule only applies to "'management employees,' which encompasses persons in management positions outside of human resources." (Doc. 49, at 11.) However, Plaintiff's argument is unavailing for at least two reasons. First, there is no genuine dispute that Plaintiff was a 'management employee' of Defendant even if her job title did not include the word 'manager.'

12

Plaintiff emphasizes that she reported directly to the Mayor and the entire Augusta Commission. (Doc. 49, at 4.) Plaintiff stipulates she was employed as "the EEO Coordinator" during the relevant time period. (Id.) Second, much like the Plaintiff in Brush, Plaintiff here was charged with investigating EEO claims against Defendant's employees. Like the 'manager' in Brush, those employees reported their respective violations to Plaintiff, who investigated their claims and issued findings related thereto. (Doc. 49-6, at 2.) Therefore, like in Brush, "there can be no dispute that [Plaintiff] acted solely as a manager here." Brush, 466 F. App'x at 787. Plaintiff's investigations, including the findings of those investigations (including results adverse to Defendant), do not constitute protected activity, and Defendant's motion related to these claims is **GRANTED**.

**B. Plaintiff's 2014 EEOC Claim**

Plaintiff also cites her own EEOC claims as protected activities. Plaintiff filed her EEOC claim on June 24, 2014 and received her right-to-sue letter on July 3, 2014.[3] (Doc. 44-1, at 288; Doc. 12, ¶¶ 22-23.) Plaintiff admits she "chose not to pursue the claim further." (Doc. 12, ¶ 24.) However, Plaintiff claims that as a result of filing this Charge, Defendant eventually retaliated against her by firing her in March 2015. (Doc. 44-1,

---

[3] Plaintiff alleges she filed her first EEOC claim on June 24, 2014, (Doc. 12, ¶ 22), but the charge itself is dated June 23, 2014 (Doc. 44-1, at 288).

13

at 318; Doc. 12, ¶¶ 43-45.) After her firing, Plaintiff filed a second charge of retaliation on April 20, 2015. (Doc. 44-1, at 318.) In that charge, she also claimed she was "excluded from new and ongoing complaints against [Defendant] involving discrimination" and that "[o]n March 30, 2015, [she] was discharged" "in retaliation for engaging in a lawful protected activity." (Id.) Plaintiff claims "the EEOC found reason to believe that Defendant terminated Plaintiff in retaliation for engaging in a protected activity" on May 30, 2018, and Plaintiff received her right to sue letter on March 18, 2019. (Id. ¶¶ 39-39.) This suit followed eighty days later. (Doc. 1.)

"The filing of a formal charge of discrimination with the EEOC clearly is protected under the 'participation clause.'" Brown v. Huntsville City Bd. of Edu., 324 F.R.D. 239, 251 (N.D. Ala. 2018) (citing Berman v. Orkin Exterminating Co., 160 F.3d 697, 702 (11th Cir. 1998)). Here, however, Plaintiff has stipulated that "the evidence does not . . . support a claim of retaliation pursuant to the participation clause, and makes no challenge to Defendant's Motion on that basis." (Doc. 49, at 10 n.2.) Accordingly, Plaintiff has failed to make a *prima facie* showing of an adverse employment action, and summary judgment is appropriate.[4]

---

[4] The Court notes that even if Plaintiff had not waived her argument under the participation clause, she would not be able to show the third element of a *prima facie* case: causation. Thus, her claim would still fail. To show causation, a plaintiff must show that "there was a causal connection between the protected

14

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (Doc. 40) is **GRANTED**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendant, **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 24th day of January, 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

activity and the adverse employment action." Crawford, 529 F.3d at 970 (citation omitted). "To establish a causal connection, a plaintiff must show that the relevant decisionmaker was 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." Kidd v. Mando Am. Corp., 731 F.3d 1196, 1210 (11th Cir. 2013) (citation omitted). When proximity is the sole evidence of causation, the temporal gap between the protected activity and the alleged adverse employment action (in this case, the 2014 EEOC filing and termination) must be "very close." Clark Cnty. Sch. Dist. V. Breeden, 532 U.S. 268, 273 (2001) (*per curiam*). Nine months is generally not close enough to show causation by mere temporal proximity, and Plaintiff failed to show otherwise sufficient causation here. See, e.g., Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1361 (11th Cir. 2007).

15